**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4318**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

LOGAN ROY MCCAULEY,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T.S. Ellis, III, Senior District Judge.  (1:18-cr-00330-TSE-1)

Argued:  October 30, 2020                  Decided:  December 18, 2020

Before WILKINSON, MOTZ, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:**  Christopher Amolsch, Reston, Virginia, for Appellant.  Alexander Patrick Berrang, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Frank Salvato, Alexandria, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Gwendelynn Bills, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Appellant Logan McCauley was convicted of one count of employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct "for the purpose of producing [a] visual depiction of such conduct" in violation of 18 U.S.C. § 2251(a). McCauley seeks to vacate his conviction on several grounds, including that the district court incorrectly instructed the jury that § 2251(a) merely requires filming to be "a purpose," which can arise at any time, of engaging in the sexual conduct. For the reasons set forth herein, we agree with McCauley, vacate the conviction, and remand for further proceedings consistent with this decision.

I.

In 2017, McCauley was twenty-four years old and living with his mother in Hamilton, Virginia. McCauley met the thirteen-year-old minor at issue in this case, N.C., on an online text and video messaging platform. After about a week of frequently chatting and video messaging online, N.C. asked McCauley to pick her up from her mother's house in West Virginia. McCauley made the three-and-a-half-hour drive to N.C.'s home, arriving there around 1:30 a.m. on November 27, and arriving home again around 5:00 a.m.

N.C. and McCauley spent about thirty-six hours together before officers arrived at McCauley's mother's house in Hamilton. During that time, N.C. met McCauley's mother and his mother's fiancé. McCauley took N.C. to his place of work and introduced her to his coworkers. The two took pictures of their time together, including seven photographs

2

in bed.[1] McCauley and N.C. also had sex "four or five times" between 5:00 a.m. on November 27 and the early evening of November 28 when officers arrived at the McCauley residence. J.A. 734.

During one of these encounters, McCauley took a nineteen-second video on his iPhone, which formed the basis of his indictment and conviction under § 2251(a). The nineteen-second video first focuses on N.C.'s face and exposed breasts. It then pans down to show their genitalia during sexual intercourse before again showing N.C.'s upper body. McCauley does not instruct N.C. what to do or say during the video. iPhone records demonstrated that the video was created at 8:22 a.m. on November 27. At trial, a representative for Apple, the company which manufactures the iPhone, testified that in order to operate the camera, McCauley would have had to press a button, swipe the lock screen, or unlock his iPhone with a fingerprint or passcode, and then start the video function. Finally, at 9:54 a.m., a friend of McCauley sent him an online text message, asking him what he was doing. McCauley told the friend he was in bed "with [his] girl," and that they "ended up making a video this morning lol [laugh out loud]." J.A. 1138–39.

On the evening of November 28, officers arrived at the house to find McCauley, his mother, and N.C. sitting outside. They informed the three they were looking for a minor, and N.C. subsequently accompanied the officers during their thirty-minute search of the house. Detectives did not find any recording equipment, such as specialized lighting,

---

[1] The photographs did not form part of the indictment. They showed N.C. and McCauley either smiling at the camera or kissing, and in one N.C. was topless.

specialized video equipment, or camera tripods. After confirming N.C.'s identity, officers escorted her from the home. McCauley told officers that he had sex with N.C. and showed them the video. The officers seized McCauley's phone. Detectives also obtained McCauley's online communications with other users on the chat and video messaging platforms. In these communications, the other users asked McCauley if he wanted "to play texting sex," J.A. 995, and McCauley asked users for pornographic pictures.

Finally, on November 30, McCauley contacted detectives to talk and in hopes of returning a necklace to N.C. Detectives met McCauley at his place of business and surreptitiously recorded the interview. In response to a question regarding when McCauley decided to make the video, he responded:

> [W]e were in the middle of sex and I asked her if we could do the video. Well I didn't really ask her. I just kind of grabbed my phone and she goes "what are you doing?" and told her I was going to make a video and she goes okay.

J.A. 990. McCauley also told detectives that the two did not talk about the video before making it.

McCauley was initially charged in Loudoun County, Virginia with two counts of unlawful carnal knowledge in violation of Va. Code Ann. § 18.2-63. Before a guilty plea was entered in state court, a federal grand jury charged him with the current count at issue in this appeal.[2]

---

[2] The Commonwealth *nolle prossed* the case on May 6, 2019 and "may revive the charges at any time with no statute of limitations issues." Appellant Reply Br. at 26 n.42; *see also* Va. Code Ann. § 19.2-8.

At trial, McCauley moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of both the government's and the defense's case, which the court denied. The district court gave two instructions regarding the "for the purpose" element, to which McCauley objected. First, the court instructed:

> In deciding whether the Government has proven that the defendant acted for the purpose of producing a visual depiction of the sexually explicit conduct, you may consider all of the evidence concerning defendant's conduct. It is not necessary for the Government to prove that the production of the visual depiction of sexually explicit conduct was the defendant's sole purpose in engaging in sexual activity with N.C.
> However, it is insufficient . . . to find that the defendant acted for the purpose of producing a visual depiction of sexual activity if you determine that the Government has shown only that the defendant engaged in sexual conduct with a minor and produced a visual depiction of that conduct.

J.A. 945. After some deliberation, the jury asked the court: "Does 'engagement' mean at the start of the act or can it be at some point of the act?" J.A. 975. Over McCauley's objection, the court reread only the first paragraph of the instruction outlined above and provided this additional instruction:

> The Government is required to prove that the production of a visual depiction was *a* purpose of engaging in the sexually explicit conduct. However, it is insufficient to find that defendant acted for the purpose of producing a visual depiction of sexually explicit conduct if you determine that the Government has shown only that the defendant engaged in sexual conduct with a minor and produced a visual depiction of the conduct. . . .
> You may find that the defendant engaged in sexual conduct with N.C. for *a* purpose of producing a visual depiction of that conduct if you find that defendant engaged in that sexual activity for that purpose *at any point during that sexual conduct*.

J.A. 976 (emphases added). The jury returned a guilty verdict shortly after this instruction. The district court sentenced McCauley to the statutory minimum of fifteen years' imprisonment and 5 years' supervised release. 18 U.S.C. § 2251(e). This appeal followed.

5

## II.

Appellant argues that the district court erred by instructing the jury that the government could meet its burden simply by demonstrating that creating the video was "a purpose" of the defendant's for engaging in sexual conduct with the minor, and that "a purpose" could "arise at any time" during the sexual conduct.

"We review a district court's decision to give a particular jury instruction for abuse of discretion, and review whether a jury instruction incorrectly stated the law *de novo*." *United States v. Miltier*, 882 F.3d 81, 89 (4th Cir. 2018) (citations omitted). This review requires us to consider the jury instruction "in light of the whole record," to determine whether it "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Id.* (internal quotation marks omitted). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case." *Id.* (internal quotation marks omitted).

We acknowledge that instructional errors do not usually form the basis of a reversal. District courts enjoy wide latitude in formulating instructions. *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1293 (4th Cir. 1995). This makes good sense as they see the evidence and witnesses and are closest to the case. Thus, appellate courts must exercise restraint and review the instructions in the context of the whole trial, not act as a particularly strict teacher grading a student essay for perfection. *See id.* at 1296 ("It is not the function of an appellate court to nit-pick jury instructions to death."); *Henderson v. Kibbe*, 431 U.S. 145, 152 n.10 (1977) ("[A] single instruction to a jury may not be judged in artificial isolation,

6

but must be viewed in the context of the overall charge." (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926))). And in fact, the Supreme Court has held that even the instructional error of omitting an element of a statute is not necessarily infirm in the absence of serious prejudice. *Neder v. United States*, 527 U.S. 1, 8–9 (1999). Even with those background principles in mind, however, we find that the instructional error in this case—which was objected to and went to the absolute heart of the defense—is too much to overlook because it fundamentally misconstrued the statute.

## A.

We begin as always with the statutory text. *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013). Section 2251(a) criminalizes "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] any minor to engage in . . . any sexually explicit conduct *for the purpose of producing* any visual depiction of such conduct." 18 U.S.C. § 2251(a) (emphasis added).[3] Put most simply, the statute requires the government

---

[3] A conviction under 18 U.S.C. § 2251(a) requires the government to prove beyond a reasonable doubt three elements:

> (1) the victim was less than 18 years old;
> (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct *for the purpose* of producing a visual depiction of that conduct; and
> (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce.

*United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009) (emphasis added). Only the second element—the "purpose" element—was disputed at trial, so that is where we focus as well in reviewing the district court's instructions.

to prove that creating a visual depiction was "the purpose" of an accused for engaging in sexual conduct, not merely "a purpose" that may happen to arise at the same instant as the conduct.

Distinguishing between "the" and "a" is not picking at the district court's instruction in this instance—here, there is a fundamental difference between the definite and indefinite article. *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("Our reading [of 8 U.S.C. § 1226(c)] is confirmed by Congress's use of the definite article in 'when the alien is released.'" (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012))); *Work v. United States ex rel. McAlester-Edwards Coal Co.*, 262 U.S. 200, 208 (1923) (differentiating between "the" and "an"). The difference is whether the accused's alleged purpose carries some predominant weight, as required by the plain statutory language, or whether filming was one among many, potentially much more significant purposes. Indeed, "a purpose" could be merely one in ten as the government erroneously argued in closing below, J.A. 894–95, without considering any relative weight amongst these varying purposes. Under this formulation, "a purpose" to record could be "merely incidental" to other more significant purposes. *See United States v. Torres*, 894 F.3d 305, 312–13 (D.C. Cir. 2018) (finding evidence sufficient that "obtaining the sexually explicit images was itself important to Torres—not merely incidental to the immediate gratification he derived from [the minor's] conduct"). But the language "*the* purpose" requires that the filming be at the very least a significant purpose in the sexual conduct itself, not merely incidental. *See Mortensen v. United States*, 322 U.S. 369, 374 (1944) (interpreting "for the purpose of" under the Mann Act to be "the dominant motive"). Two

8

of our sister circuits have recognized this, defining "the purpose" as "one of the *dominant*" motives or purposes under § 2251(a). *See United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996); *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009).

The minimum penalty under 18 U.S.C. § 2251 further underscores the requisite seriousness of intent. "Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*." *Staples v. United States*, 511 U.S. 600, 616 (1994). Congress has provided a mandatory minimum of fifteen years' imprisonment for violation of § 2251(a), and it is not our job to question the legislature's judgment. 18 U.S.C. § 2251(e). In fact, many of those who produce visual depictions of child pornography may deserve far more than the mandatory minimum, given the deeply harmful effects that such production can wreak on individual lives and on our social fabric, and given the special solicitude that Congress has shown for minors in our society. *See New York v. Ferber*, 458 U.S. 747, 757–58 (1982). But the stiffness of this minimum penalty also demonstrates that Congress meant what it said when it wrote that creating a visual depiction must be "the purpose" in engaging in the sexual conduct. Instructing a jury that it is sufficient to find filming was "a purpose" that could "arise at any time" during the sexual conduct is for courts to improperly greenlight a fifteen-year minimum sentence for someone who engages in sexual conduct and takes a picture. *See United States v. Palomino-Coronado*, 805 F.3d 127, 132 (4th Cir. 2015).

This is unsurprising. The Constitution vests Congress with enumerated powers to punish certain behavior, while reserving the general police power for the States. U.S.

Const. art. I, § 8; *id.* amend. X; *see also United States v. Lopez*, 514 U.S. 549, 551, 561 (1995).  Thus, given the structure of our federal criminal justice system, we would expect that state laws criminalizing sexual activity with minors would encompass a broader range of conduct than federal laws.  Here, for example, the criminal conduct of placing minors in sexual activity is captured by criminal statutes other than § 2251(a)—in particular, state sexual abuse provisions, which often impose strict liability.  *See, e.g.*, Md. Code Ann., Crim. Law § 3-304; N.C. Gen. Stat. § 14-27.25; S.C. Code Ann. § 16-3-655.  This includes the state sexual abuse provision under which the defendant was originally—and could still be—prosecuted.  *See* Va. Code. Ann. § 18.2-63 (statutory maximum of ten years).

Our own precedent confirms both the breadth and the limits of § 2251(a).  In *Palomino-Coronado*, we vacated a defendant's conviction because "[t]he single photo [was] not evidence that Palomino-Coronado engaged in sexual activity with [the minor] *to* take a picture, only that he engaged in sexual activity with [the minor] *and* took a picture." 805 F.3d at 132.  Accordingly, § 2251(a) does not criminalize a spontaneous decision to create a visual depiction in the middle of sexual activity without some sufficient pause or other evidence to demonstrate that the production of child pornography was at least a significant purpose.  Adducing "a purpose" arising only at the moment the depiction is created erroneously allows the fact of taking an explicit video of a minor to stand in for the motivation that animated the decision to do so.  It is for this reason that while the image itself can be probative of intent if the prosecution makes a sufficient connection, it cannot be the only evidence.  *See id.* at 133.  That would impermissibly reduce the statute to a strict liability offense.  *Id.* at 132; *see also Torres*, 894 F.3d at 312 ("We do not believe—

10

so do not hold— that "the 'purpose' element of § 2251 is proven by the mere fact that the Defendant personally took a photo of . . . a minor engaging sexually explicit conduct.'" (quoting *United States v. Fifer*, 188 F. Supp. 3d 810, 819–20 (C.D. Ill. 2016))).

Thus the district court's instructions failed to follow the plain language of the statute and this court's precedent. This error of law was an abuse of discretion. *See United States v. Hurwitz*, 459 F.3d 463, 474 (4th Cir. 2006) ("By definition, a court abuses its discretion when it makes an error of law."). The court's first instruction did not explain to the jury that it must find some predominance of purpose consistent with Congress's choice to employ the phrase "the purpose" rather than "a purpose." The second, clarifying instruction compounded this error and swept too far in proclaiming that the jury could "find that the defendant engaged in sexual conduct with N.C. for *a purpose* of producing a visual depiction of that conduct if [it found] that defendant engaged in that sexual activity for that purpose *at any point during that sexual conduct.*" J.A. 976 (emphases added). The instructions invited the jury to believe, mistakenly, that "a purpose" to film could spontaneously arise at the moment the video was taken.

As the above discussion shows, any interpretation of § 2251(a) must give full effect to the specific intent element. A purpose that arises at any time would include the moment of the visual capture itself and erase the specific intent mandate from the statute. *See Palomino-Coronado*, 805 F.3d at 130–31. The district court was correct, however, that the government need not prove the defendant's "sole" purpose in the sexual encounter was to produce a visual depiction. J.A. 945. Indeed, that interpretation would lead to unacceptable and unintended results, as "[t]he criminal law applies to everyone, not just

11

the single-minded." *Sirois*, 87 F.3d at 39 ("[A] person who transports children across state lines both to engage in sexual intercourse with them and to photograph that activity is no less a child pornographer simply because he is also a pedophile."); *see also Palomino-Coronado*, 805 F.3d at 131.

Whether an instruction reads "the purpose," "the dominant purpose," "a motivating purpose"—or some other equivalent variation—may not be crucial, but the statute plainly requires something more than "a purpose." Such language fails to give proper respect to text of the statute. Indeed, a few weeks before oral argument in the present case, the government agreed to an instruction requiring the filming be "one of the defendant's motivating purposes." *United States v. Hewlett*, No. 1:20-cr-64 (E.D. Va.). And a few weeks before that, this court affirmed a defendant's § 2251(a) conviction under an instruction requiring that the purpose of filming be "a significant or motivating purpose." *United States v. Thompson*, 807 F. App'x 251, 252 (4th Cir. 2020). While a district court's prior instruction is not precedential, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), these agreements demonstrate that such an instruction is workable and does not undermine the government's ability to prosecute offenders under § 2251(a).

### B.

Finally, considering the trial as a whole, it is clear that the district court's erroneous instructions seriously prejudiced McCauley's case. *See Miltier*, 882 F.3d at 89. The trial focused on the question of whether McCauley harbored the requisite purpose to be convicted under § 2251(a). McCauley argued that the filming was simply a spontaneous decision he made in the middle of the sexual activity, which was incidental to his amorous

12

feelings for N.C. with whom he believed he was in a relationship. The government, on the other hand, argued that circumstantial evidence demonstrated McCauley's purpose to video the encounter arose before the sexual conduct, but alternatively argued that McCauley's quick statement to N.C. during the sexual activity or the video itself were sufficient to show a purpose. J.A. 895–96. These arguments hinged on the government's erroneous closing argument that:

> [I]t's not *the* purpose, but rather *a* purpose. . . . In other words, if the defendant had *ten different purposes* for having sex with N.C., and you find beyond a reasonable doubt that just one of those purposes was to produce the video in question, then the Government submits that the purpose element is met.

J.A. 894–95 (emphases added). Such an argument—paired with the fact that the jury returned a verdict quickly after the court's second, clarifying instruction—shows a high likelihood that the jury was misled by the court's incorrect instructions. Indeed, we assume that the jury follows the court's instructions. *United States v. Moye*, 454 F.3d 390, 399 (4th Cir. 2006) (citing *United States v. Olano*, 507 U.S. 725, 740 (1993)). But the statute written by Congress does not create the low bar for *mens rea* as argued by the government.

When charged conduct does not fall in the heartland of a statute's proscription, the risk of prejudice becomes more palpable. *See Doornbos v. City of Chicago*, 868 F.3d 572, 580 (7th Cir. 2017) ("The risk that an incorrect jury instruction prejudiced a party depends at least in part on how closely balanced the evidence was at trial."). Given the indisputably broad swath of serious misconduct that § 2251(a) covers, and because the charged conduct approached the outer limits of § 2251(a)'s proscription, it was of the upmost importance that the trial court give a proper jury instruction. It is not that defendant's conduct was in

13

any way excusable or beyond the reach of the criminal law. It is simply that it is quite possible that properly instructed, the jury would find this defendant's conduct falls outside § 2251(a)'s prohibition on using minors for "the purpose" of producing child pornography. The plain statutory language, the stiffness of the mandatory minimum penalty, and our own precedent dictate that while § 2251(a) is a broad statute, its reach is not unlimited. Because we vacate McCauley's conviction on the grounds that the erroneous jury instructions seriously prejudiced his case, we need not address the additional grounds on which he challenges his conviction.

III.

For the foregoing reasons, we vacate the conviction and remand for further proceedings consistent with this decision.

*VACATED AND REMANDED.*